Donald Ray HARRIS, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–90–00154–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 4, 1990.

Pamela P. Shaffer, Houston, for appellant.

Roger A. Haseman, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Donald Ray Harris, appeals his judgment of conviction for the offense of aggravated kidnapping. TEX.PENAL CODE ANN. § 20.04 (Vernon 1989). A jury rejected appellant's not guilty plea and, after finding the enhancement allegation of the indictment to be true, assessed his punishment at sixty years confinement in the Institution Division of the Texas Department of Criminal Justice and a ten thousand dollar fine. We affirm.

Appellant brings two points of error in his appeal. In his first point of error appellant asserts the trial court erred by not sustaining his objection to the prosecutor eliciting jury sympathy by offering photographs of the complainant through the complainant's mother and causing the mother to cry in the presence of the jury.

The record in this case reveals that appellant abducted the complainant, a ten year old girl, in her own apartment on December 7, 1987. Appellant grabbed her and threw her into a closet, while closing all of the doors and essentially barricading himself in one of the bedrooms. Appellant put a plastic bag over the child's head, told her that he had a gun, and threatened to kill her. Appellant tied the complainant up and bit her on the finger, cheek and stomach. He also struck the complainant. The complainant was finally released by SWAT officers after they subdued appellant.

Juanita Browne, the complainant's mother, testified that when she arrived home, the door to her apartment was unlocked and the door to her bedroom was closed. Browne could not get through the bathroom or bedroom doors as both were locked, and she heard her daughter screaming from within. Appellant told Browne to leave the apartment or he would kill the girl. According to Browne, by the time police arrived, she was screaming for her daughter. When the child was rescued, Browne described her appearance as follows:

> My daughter looked awful that night when I—when she came to me. Her face was all bruised up, her eyes was (sic) bloodshot with blood, her hair was all pulled and torn, her finger was all bitten, her face was all scratched with a big bite in her face. She was a mess that night.

Browne further described her daughter as being in shock because she would not speak and she did not want to be touched.

■ Browne properly identified State's Exhibits 4, 5, 6, 7, 8, and 9 and the exhibits were admitted without objection. Exhibits 4, 5, and 6 showed the apartment in a state of disarray with clothing and furniture scattered about. Exhibit 7 is a photograph of the complainant, depicting an injury that Browne testified she did not have when she went to school that morning. Exhibit 8 was identified as a photograph of the complainant depicting an injury to her eye and lip that she did not have when she went to school that morning. Exhibit 9 is a photograph of the complainant depicting the injury to her stomach where appellant bit her twice. After Browne completed her testimony regarding all of the exhibits, they were shown to the jury.

Although the record indicates that upon viewing Exhibit 7, Browne began to cry, we find that there is no trial court error as appellant contends. While making it clear that he had no objection to the photographs, appellant's complaint is that the prosecutor purposely showed Browne a photograph that he knew would make her cry for the sole purpose of eliciting sympathy from the jury. Appellant further states that the prosecutor could have offered the photograph for identification through other State witnesses able to make such an identification, who were less emotionally involved and less likely to produce such an outburst.

Appellant incorrectly assumes that the photographs were shown to Browne strictly for *identification* purposes. The identification of the victim, who had testified, was no longer an issue in the case, and that was not the purpose of the offer. Rather, Browne was a *fact* witness to the events surrounding the offense in this case. Her testimony was necessary to prove that the abduction was made with the intent to inflict bodily injury on the complainant. Browne's testimony established that the complainant's injuries were a result of appellant's actions, since the complainant did not have those injuries when she went to school that day. Contrary to appellant's contentions, Browne was the only witness other than the complainant, who could testify to this information, since she was the only other person who knew the complainant's physical condition when she went to school that morning.

Furthermore, appellant's reliance on *Stahl v. State,* 749 S.W.2d 826 (Tex.Cr. App.1988) is misplaced. That case is distinguishable from the instant case in a number of areas. First, Browne was not called to prove the identity of the victim, but was called to testify as a fact witness. Second, the photograph shown to Browne was not a morgue photo of a deceased person, but was a photograph depicting an injury to the

complainant. Third, there is no evidence that Browne was an emotional person or that it was foreseeable that she would likely cry upon looking at the photograph. Fourth, other than some evidence that Browne began to cry upon viewing the photograph, this is not the type of outburst that occurred in *Stahl*. Fifth, and most importantly, there is no mention of the incident *by the prosecutor* in jury argument to compound any error.

The prosecutor in the instant case could not have prevented Brown's outburst. In fact, she had been testifying for some time, and had no difficulty in verbally describing the complainant's injuries to the jury. After viewing Exhibit 7, she apparently regained her composure enough to continue to testify without interruption regarding the remaining two "injury" photographs, as well as the remainder of the prosecutor's direct examination. Browne then testified through a lengthy cross-examination without interruption.

We will follow the holding in *Landry v. State*, 706 S.W.2d 105 (Tex.Cr.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 242, 93 L.Ed.2d 167 (1986), which stands for the proposition that "[c]onduct from bystanders which interferes with the normal proceedings of a trial will not result in reversible error unless the defendant shows that a reasonable probability [exists] that the conduct interfered with the jury's verdict." *Landry v. State*, 706 S.W.2d at 112. The Court in *Landry* rejected a claim of prosecutorial misconduct. Here, there is no evidence that the prosecutor desired to use the outburst for inflammatory purposes. There are no efforts to exacerbate its effect.

■ Finally, in overruling appellant's objection, the trial court apparently did not think the prosecutor was trying to make Browne cry in front of the jury to elicit sympathy. Even if the trial court erred in not sustaining appellant's objection, we hold that the error was harmless, because it was the cumulative and synergistic effect of repeated error that caused reversible error in *Stahl v. State* at 831 n. 7, 832; and *Gonzales v. State*, 775 S.W.2d 776

(Tex.App.—San Antonio 1989, pet. ref'd). Appellant's first point of error is overruled.

■ In his second point of error appellant submits the trial court erred by admitting medical records into evidence as no notice of intent to introduce the records in the instant case was given to appellant pursuant to TEX.R.CRIM.EVID. 902(10)(a).

The record reflects that the cause upon which appellant was tried and convicted—539273—was a reindictment of cause number 508551. In turn, 508551 had been a reindictment of cause number 505206. The indictments in all three cause numbers allege an offense committed against Natalie Browne on or about December 7, 1987. More specifically, the indictments in 539273 and 508551 both allege aggravated kidnapping, the only difference being the manner and means that the offense was committed.

The State filed some business records along with an affidavit pursuant to TEX.R. CRIM.EVID. 902(10), but filed same in one of the other two cause numbers. Notice was also sent to appellant's counsel via certified mail, and counsel acknowledged receiving said notice under cause number 508551. The only objection at trial was that the notice was received in cause number 508551 instead of 539273. Counsel never objected that he did not receive timely notice.

Although the notice filed in 508551 technically should have been transferred to 539273 when the case was reindicted, we are at a loss to follow appellant's argument that the two indictments were somehow of a "different" nature. Where a case is reindicted and records are filed in the initial case, appellant's contention as to lack of notice is merely "a question of form" and should be overruled. *McCarley v. State*, 763 S.W.2d 630 (Tex.App.—San Antonio 1989, no pet.).

■ Further, the record reveals and we find that no notice was required in this case, and that TEX.R.CRIM.EVID. 902(10) was not applicable, since prior to the offer and admission of the medical records herein (State's Exhibit 11), the custodian of the records *testified* and established the proper

predicate pursuant to TEX.R.CRIM.EVID. 803(6) and (7). Where the medical records are introduced through the testimony of a "live" witness, there is no need for the State to give notice under rule 902(10)(a). *Lee v. State,* 779 S.W.2d 913, 917–18 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). In addition, the attending physician, who made the entries in the complained of records, also testified at trial and was subject to cross-examination.

We find that the trial court did not err in admitting the medical records into evidence. Appellant's second point of error is overruled. Accordingly the judgment of the trial court is affirmed.